## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientsidereports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| ENVOLVE PHARMACY SOLUTIONS, INC., | No. 83563-7-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | |
| Appellant. | |

MANN, J. — This case is about the insurance business exemption to Washington State's Business and Occupation (B&O) tax, RCW 82.04.320 (2020). During the 2012 to 2015 tax period at issues in this appeal, the insurance business exemption provided, in relevant part:

> Exemptions—Insurance business. This chapter shall not apply to any person in respect to insurance business upon which a tax based on gross premiums is paid to the state: PROVIDED, [t]hat the provisions of this section shall not exempt any person engaging in the business of representing any insurance company, whether as a general or local agent, or acting as broker for such companies.

RCW 82.04.320 (2020).[1]

---

[1] RCW 82.04.320 was amended in 2021. The amendment does not impact the issues raised on appeal.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83563-7-I/2

After an audit, the Department of Revenue (Department) assessed Envolve Pharmacy Solutions, Inc. (Envolve) with unpaid B&O taxes and penalties. The Department's assessment was affirmed by the Board of Tax Appeals (Board). Envolve petitioned the King County Superior Court for review of the Board's decision arguing that its activities were "functionally related" to insurance business and therefore exempt from B&O tax. The superior court agreed and reversed the Board's decision. The Department appeals. We agree with the trial court and conclude that Envolve's activities were at least functionally related to insurance business on which a premiums tax had been paid. We affirm.

I.

A.

Envolve[2] is a subsidiary of Centene Corporation, a publicly traded multi-line healthcare enterprise. Centene operates two lines of business: managed care and specialty services. The managed care segment provides health plan coverage to individuals through government subsidized programs, including Medicaid, CHIP,[3] and other publicly funded health programs.

In 2012, Coordinated Care Corporation (Coordinated Care), another subsidiary of Centene, contracted with the Washington State Health Care Authority (HCA) to provide services for the Basic Health and Healthy Options programs. Coordinated Care is licensed with the Washington Office of the Insurance Commissioner as a Health Maintenance Organization, and files and pays Washington's "premiums and

---

[2] Envolve was originally known as U.S. Scripts, Inc. It changed its name to Envolve Pharmacy Solutions, Inc. in 2016.

[3] Washington Children's Health Insurance Program.

No. 83563-7-I/3

prepayments" tax imposed under RCW 48.14.0201. Coordinated Care pays a premiums tax on the monthly premiums paid by enrollees.

Under the HCA contract, Coordinated Care must maintain a network of pharmacies to provide pharmacy services and pharmacy benefits (PBM) services to enrollees. PBM services include, but are not limited to, processing and paying claims to pharmacies for drugs dispensed to enrollees, maintaining a list of prescription drugs covered under the pharmacy benefit, and conducting drug utilization reviews. Coordinated Care contracted with Envolve to fulfill its PBM services required by the HCA contract. Envolve's PBM agreement with Coordinated Care requires Envolve to manage the availability and payment of enrollees' pharmacy benefits on behalf of Coordinated Care. Coordinated Care relied on Envolve to provide the pharmacy benefits to Coordinated Care's enrollees. The PBM services performed for Coordinated Care were Envolve's only relevant business activity in Washington during the tax periods at issue.

All of the PBM services provided by Envolve under the PBM agreement were required under the HCA contract between Coordinated Care and the HCA. The PBM services Envolve must provide on behalf of Coordinated Care include:

- Administering and determining the eligibility of persons enrolled in Coordinated Care's health plan ("enrollees");
- Coordination of benefits; verification of coverage; and record keeping;
- Maintaining a network of pharmacies ("Network Pharmacies") that agree to provide pharmacy services to enrollees under the terms of Envolve's claims process;
- Auditing and credentialing Network Pharmacies to ensure compliance with the HCA Contract and federal, state, and local laws;
- Selecting Network Pharmacies at locations and in sufficient number to ensure reasonable access for enrollees;

-3-

No. 83563-7-I/4

- Processing claims from Network Pharmacies, which includes applying Envolve's concurrent drug utilization review services;
- Managing a prescription drug formulary (list of preferred prescription drugs) and collecting rebates from pharmaceutical supplies on behalf of Coordinated Care; and
- Providing a 24-hour a day, 7 day a week toll-free telephone line for inquiries regarding the PBM Services provided by Envolve.

Envolve is not a licensed pharmacy in Washington. Envolve does not provide pharmacy services or mail-order pharmacy services to Coordinated Care. HCA enrollees fulfill prescription drug orders at network pharmacies, not through Envolve. The network pharmacies then compound or purchase prescription drugs and deliver the prescription drugs directly to enrollees. Envolve does not purchase prescription drugs from network pharmacies or deliver prescription drugs to enrollees. The network pharmacies file a claim for services and prescription drugs provided to enrollees, which Envolve then processes and arranges for payment on Coordinated Care's behalf. Envolve's payment structure is in the PBM agreement and is based on a percentage of collected amounts or set fees.

B.

Envolve filed Washington excise tax returns beginning with the 3rd quarter 2012 reporting period. Envolve reported and paid B&O tax under the "service and other" reporting category.

In December 2012, a tax representative for Centene submitted a letter ruling request to the Department. The request asked whether Medicaid receipts received by Coordinated Care and passed on to its affiliates, including Envolve, were subject to B&O tax, or exempt from tax under RCW 82.04.320—the insurance business exemption.

No. 83563-7-I/5

In October 2013, the Department issued a letter ruling explaining that the affiliates could qualify for the B&O exemption only if they were providing services that were "functionally related" to Coordinated Care's insurance business.  The letter explained:

> Because the affiliates do not pay a premiums tax, they can qualify for the B&O exemption only if they are providing services that are functionally related to Coordinated Care's insurance business.  Functionally related services are those activities incidental to accomplishing the insurance function.  Services performed are considered functionally related if they relate exclusively to the insurance business that pays the premium taxes.
>
> Thus, if an affiliate is providing administrative, legal, or other services functionally related to Coordinated Care's insurance business, the amounts the affiliate receives from Coordinated Care for those services will be exempt from B&O tax to the extent that Coordinated Care paid the premiums tax to Washington State.

After receiving the letter ruling, Envolve filed amended B&O tax returns, requesting a refund of $73,263 for July 1, 2012, through September 30, 2013.  Envolve claimed that all the services provided to Coordinated Care were functionally related to Coordinated Care's insurance business.  Envolve requested a refund of all B&O taxes paid because Coordinated Care had paid the premiums tax on those receipts.

The Department denied the requested refund.  Expanding on its October 2013 letter ruling, the Department explained that some services provided by Envolve were functionally related to Coordinated Care's insurance function, and some services which were not.

> Functionally related services are those activities incidental to accomplishing the insurance function.  Services performed are considered functionally related if they relate exclusively to the insurance business that pays the premium taxes.

No. 83563-7-I/6

> Administrative services are generally considered functionally related. Thus, an affiliate doing administrative services (i.e., HR, claims processing and adjusting) will be exempt from paying B&O taxes on the amounts that it receives from [Coordinated Care], to the extent that [Coordinated Care] paid premiums tax to Washington.
>
> The function of insurance is to help pay for and cover the costs of health care services. Thus, the provision of health care services is not incidental to accomplishing this function. Providing health care services is independent from providing health insurance.
>
> [Envolve] provides some administrative services (claims processing, adjudicating, etc.) to [Coordinated Care] as a pharmacy benefit manager. Any amounts received for these services are exempt from B&O tax. These services include: claims processing, determining eligibility of recipients, coverage verification, prior authorization, maintaining the list of covered drugs, providing a customer service phone line to answer questions about the foregoing services and other similar services. However, to the extent [Envolve] provides additional services (such as maintaining a network of pharmacies, providing mail order pharmacy services, selecting network pharmacies, etc.) the amount it receives for these services must be included in gross income.

(Emphasis added.) The refund request denial did not explain how or why the Department considered some of Envolve's activities functionally equivalent and some not.

Following the denial of Envolve's refund request, the Department audited Envolve for the period January 2010 through June 2015. The audits led to two assessments totaling over $3.5 million. The audits asserted tax on amounts Envolve had received from Coordinated Care and paid to third-party pharmacies. The audits noted that Envolve might be able to exclude some of the payments it received under the "functionally related" criteria, but needed to prove which funds were for which purposes:

> Therefore, [Envolve] may be able to exclude some amounts it retains as an administrative services fee for the administrative services it performs. To the extent that [Coordinated Care] is paying the fee for services that are functionally related to its insurance business, [Envolve] can exclude

-6-

No. 83563-7-I/7

the amounts under the B&O exemption for premiums so long as [Coordinated Care] pays premiums tax to Washington State for those amounts. However, it is the burden of [Envolve] to show which amounts are received for providing functionally related services and which are received for other services. Additionally, [Envolve] may not exclude any of the fees it receives or retains from providing pharmacy benefit management services to unrelated third parties.

Envolve responded by providing documentation related to administrative services it provided to Coordinated Care. The Department then revised the assessments, explaining:

[Envolve] was able to provide documentation and information relating to employees that provide administrative services (claims processing, adjudicating, etc.) to Coordinated Care as a pharmacy benefit manager. The amounts received for those services are exempt from B&O tax. Pursuant to the audit, [Envolve] provided documentation to substantiate employee counts in the administrative services function as well as total employee counts. A ratio was then calculated (administrative employees divided by total employees) and applied against the total administrative services fee to compute the amount subject to Service and Other B&O tax. However, the payments to the pharmacies (for ingredient costs and dispensing fees) are not excludable from B&O tax under WAC 458-20-111 as discussed above and those amounts which were erroneously deducted to arrive at the tax base on the excise tax returns have been assessed in full.

After the revision, the audits assessed $3,203,762 in unpaid B&O tax, plus interest, and 5 percent assessment penalty.

Envolve sought administrative review of the denial of its refund claim and the assessments of underreported B&O tax with the Department's Administrative Review and Hearings Division (ARHD). The ARHD upheld the assessments. ARHD agreed with the Department that Envolve was engaged in some activities that were functionally related to insurance and some that were not:

[I]t appears that [Envolve] is engaged in certain "general administrative services" like "accounting personnel and data processing" that are

-7-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83563-7-I/8

> functionally related to Affiliate MCO's insurance business. . . . In particular, Taxpayer's administration of eligibility management services, claim processing, claims adjudication, benefit coordination, coverage verification, and recordkeeping services are all "general administrative services" that are similar to the "functionally related" services in Det. 88-311A, 2 WTD 293.
>
> However, [Envolve] is also engaged in a number of activities that do not appear to be "functionally related" to Affiliate MCO's "insurance business," in that they are not "activities incidental to accomplishing the insurance function." The activities that are not "functionally related" include: maintaining a network of pharmacy contacts; credentialing of network pharmacies; selecting network pharmacies; drug utilization review services; quality improvement; managing the prescription drug formulary; collecting rebates from pharmaceutical manufacturers; and maintaining information data systems.

Envolve appealed the ARHD decision to the Board. Envolve argued that the amounts it received were functionally related to Coordinated Care's insurance business under both the 2013 Letter Ruling and the Department's published Revenue Determination 88-311A, 9 Wash. Tax. Dec. 293 (1990).[4]

After cross motions for summary judgment, the Board agreed with the Department and concluded that Envolve failed to establish that it was entitled to avoid B&O tax on all its PBM services income. The Board found that Envolve was entitled to rely on the Department's precedent and that any activities that were "functionally related" to insurance qualified as "insurance business" activities exempt from B&O tax

---

[4] RCW 82.32.170 allows taxpayers to petition for determining whether a refund request was properly denied. WAC 458.20.100 sets out the Department's rules for informal administrative reviews, including determinations. Under the rule, "[t]he department will make such determination and resolve matters as may appear to the department to be just and lawful under its statutory authority." WAC 458-20-100. The Department may publish a determination when: (1) the decision is a well-reasoned application of the law to a specific set of facts, (2) the decision addresses only the law and facts necessary to resolve the case, (3) the decision is needed to provide guidance on a previously unaddressed area of the law, articulate the Department's current policy, apply the law to a significantly different set of facts, overrule a published determination, or provide a better or more current articulation on how the law should be interpreted, and (4) the decision can be effectively sanitized, or the taxpayer will grant a waiver of the secrecy clause.

No. 83563-7-I/9

under RCW 82.04.320. But the Board found that Envolve provides "pharmacy services," which the Board asserted are "healthcare services" outside the definition of insurance and not covered by the functionally related test. Envolve unsuccessfully moved for reconsideration.

Envolve petitioned for judicial review of the Board's final order with the King County Superior Court. The superior court reversed the Board's order, holding that the Department's prior administration of the statute was consistent with the statutory language, and that Envolve's activities were insurance business activities exempt under RCW 82.04.320. The court also held that Envolve was entitled to rely on the Department's letter ruling under RCW 82.32A.020. The trial court's order required the Department to refund the B&O tax Envolve paid on its PBM services income.

The Department appeals.

II.

A.

The Administrative Procedure Act (APA), ch. 34.05 RCW, governs judicial review of the Board's decision. RCW 82.03.180; RCW 34.05.510. PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue, 9 Wn. App. 2d 775, 779, 449 P.3d 676 (2019), aff'd, 196 Wn.2d 1, 468 P.3d 1056 (2020). This court sits in the same position as the superior court, directly reviewing the Board's decision. Dep't of Revenue v. Bi-Mor, Inc., 171 Wn. App. 197, 202, 286 P.3d 417 (2012). The burden of demonstrating the invalidity of agency action is on the party challenging the agency order—in this case Envolve. RCW 34.05.570(1)(a).

-9-

No. 83563-7-I/10

We may reverse the Board's decision if, among other reasons, the agency erroneously interpreted or applied the law, the agency's order is not supported by substantial evidence, the order is outside the agency's statutory authority, or the order is arbitrary and capricious. RCW 34.05.570(3). We review issues of law de novo under the APA error of law standard which allows us to substitute our view of the law for that of the Board. Bi-Mor, 171 Wn. App. at 202.

The meaning of a statute is a question of law that we review de novo. Durant v. State Farm Mut. Auto. Ins. Co., 191 Wn.2d 1, 8, 419 P.3d 400 (2018). Our "fundamental objective in determining what a statute means is to ascertain and carry out the legislature's intent." Durant, 191 Wn.2d at 8. "If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the legislature intended." Durant, 191 Wn.2d at 8. To discern a statute's plain meaning, we consider the text of the provision in question, considering the statutory scheme as a whole. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 11, 43 P.3d 4 (2002). "We may use a dictionary to discern the plain meaning of an undefined statutory term." Nissen v. Pierce County, 183 Wn.2d 863, 881, 357 P.3d 45 (2015).

B.

Envolve argues that the Board erred by concluding that it did not qualify for an exemption from B&O tax under the insurance business exemption, RCW 82.04.320.[5] We agree.

---

[5] The Department appears to argue on appeal that because Coordinated Care is an HMO it does not pay a "premiums" tax under RCW 48.14.020, but pays a premiums and prepayment tax under RCW 48.14.0201. While the Department is technically correct that Coordinated Care is an HMO and pays a premiums and prepayment tax under RCW 48.14.0201, it is a distinction without importance. RCW 82.04.320 creates an exemption from B&O tax where a tax based on gross premiums has been paid.

-10-

No. 83563-7-I/11

The B&O tax is imposed "for the act or privilege of engaging in business activities" and is measured by the "value of products, gross proceeds of sales, or gross income of the business, as the case may be." RCW 82.04.220(1). The tax is intended to reach "virtually all business activities carried on within the state" and "applies unless a specific exemption exists." Avnet, Inc. v. Dep't of Revenue, 187 Wn.2d 44, 66, 384 P.3d 571 (2016); Dot Foods, Inc. v. Dep't of Revenue, 185 Wn.2d 239, 245, 372 P.3d 747 (2016). One such exemption is the "insurance business" exemption in RCW 82.04.320. The exemption provides that "any person in respect to insurance business upon which a tax based on gross premiums is paid to the state" is exempt from paying the B&O tax.

The Department first argues that RCW 82.04.320 does not apply as a matter of law because Envolve itself did not pay the premiums tax. This view, however, contradicts the plain language of the statute. The exemption in RCW 82.04.320 applies to "any person in respect to insurance business upon which a tax based on gross premiums is paid to the state." (Emphasis added.) The statute does not require that the entity claiming the exemption must be the same entity that paid the premiums tax. Instead, the question is whether Envolve was performing "insurance business" on which a premiums tax was paid.

The term "insurance business" is not defined in the state tax code. See ch. 48.01 RCW; ch. 48.05 RCW. The Department argues, and the Board appeared to agree, that Envolve provided "heathcare services" and not insurance benefits. This is based on the

The Department does not contest that Coordinated Care paid such a premium tax. The argument also appears new on appeal. The Department's audits, the ARHD determination, and the Board's decision, all addressed RCW 82.04.320 and RCW 48.14.020.

-11-

No. 83563-7-I/12

Department's contention that insurance business is limited to only administrative duties such as issuing contracts and collecting premiums. Envolve, on the other hand, argues that insurance business should be read broadly enough to include the business of carrying out the PBM services required under the HCA contract.[6] We agree with Envolve.

A fair reading of "insurance business" in RCW 82.04.320 includes more than the administrative tasks of issuing contracts and collecting premiums. It includes the activities necessary or incidental to fulfilling the requirements of the insurance contract. Indeed, since at least 1990, the Department has applied a "functionally related" test to interpret the extent of "insurance business":

> For purposes of RCW 82.04.320, the insurance business includes not only those activities specifically regulated under Title 48 RCW, but those which are functionally related as well. . . . Revenue generating activities which are considered functionally related to a taxpayer's insurance business are those activities incidental to accomplishing the insurance function.

Revenue Determination No. 88-311A, 9 Wash. Tax. Dec. 293, 297-98 (1990). The Department's 2013 letter ruling to Centene was consistent with Revenue Determination No. 88-311A.

We agree with the trial court that the "functionally related" test adopted in Revenue Determination No. 88-311A is a reasonable interpretation of the term "insurance business" within RCW 82.04.320, and consistent with the plain language of

---

[6] The Department also argues that Envolve is not an "authorized insurer," under RCW 48.05.030(1) and if it were, it would have to pay a premiums tax under RCW 48.15.020. The Department's argument misses the point—while Envolve may not be an "insurer," Coordinated Care is, and Coordinated Care pays a premium tax based on fulling the duties under the HCA contract, including PBM services. Envolve, by contract, is carrying out Coordinated Care's obligations under the HCA contract.

-12-

No. 83563-7-I/13

the statute.[7]  Consistent with Revenue Determination No. 88-311A, we hold that where activities are required to be performed under the insurance contract in exchange for premium payments, and a tax is paid on those premium payments, the activities are at least functionally related to "insurance business" under RCW 82.04.320.[8]

There is no dispute that under the HCA contract, Coordinated Care must maintain a network of pharmacies to provide PBM services and benefits to enrollees. There is also no dispute that if Coordinated Care performed the PBM services required under the HCA contract, it would be exempt from B&O tax under RCW 82.04.320.  And finally, there is no dispute that Coordinated Care contracted with Envolve to fulfill the PBM services required by the HCA contract.  Requiring Envolve to pay a B&O tax for performing services required under the HCA contract, where Coordinated Care already paid a premium tax, would result double taxation—contrary to the intent of the exemption.  Grp. Health Coop. v. Dep't of Revenue, 8 Wn. App. 2d 210, 214-19, 438 P.3d 158 (2019).

Envolve performs PBM services—services required under the Coordinated Care's HCA contract.  Envolve was required to maintain a network of pharmacies,

_____

[7] The Department withdrew Revenue Determination No. 88-311A in 2019 stating it was wrongly decided.  The Department now takes the position that, to be eligible for the exemption, the taxpayer itself must be subject to the insurance premiums tax.  But neither party is arguing that the functionally related test in Revenue Determination No. 88-311A does not apply here.  And the Board concluded that Envolve had the right to have its tax liability determined using that standard for the tax periods at issue. Washington's Taxpayer Bill of Rights grants taxpayers the "right to rely on specific, official written advice and written tax reporting instructions from the department of revenue to that taxpayer, and to have interest, penalties, and in some instances, tax deficiency assessments waived where the taxpayer has so relied to their proven detriment."  RCW 82.32A.020(2).  The Board correctly held that Envolve was entitled to rely on the letter ruling.  The only question is thus whether the Board properly applied the functionally related test to those tax periods at issue.

[8] See also RCW 48.01.060 (3)-(4) (defining "insurance transaction" to include the "execution of an insurance contract" and "[t]ransaction of matters subsequent to execution of the contract and arising out of it."

No. 83563-7-I/14

process claims from network pharmacies, audit pharmacies to ensure compliance with

the HCA contract, and administer and determine eligibility of persons enrolled in

Coordinated Care's health plan. Because these activities are required under the HCA

contract and, if performed by Coordinated Care, would be considered insurance

business activities, it is unreasonable to claim these actions are not at least functionally

related to the insurance business.

C.

The Department relies on Rena-Ware Distribs., Inc. v. State, 77 Wn.2d 514, 518,

463 P.2d 622 (1970), Armstrong v. State, 61 Wn.2d 116, 377 P.2d 409 (1962), and

Express Scripts, Inc. v. Dep't of Revenue, 8 Wn. App.2d 167, 437 P.3d 747 (2019), in

support of its argument. Each case is either not applicable or distinguishable.

The Department relies on Rena-Ware, for the proposition that affiliated

businesses, although owned by a common parent, remain separate entities for tax

purposes. 77 Wn.2d at 518. Thus, the Department contends, Envolve cannot justify

claiming an exemption because one of its sister companies can rightfully claim an

exemption. But contrary to the Department's representation, Envolve is not claiming the

insurance business exemption because its corporate affiliate is exempt. Instead,

Envolve claims that it is exempt under RCW 82.04.320 because its activities providing

PBM services to Coordinated Care are at least functionally related to "insurance

business upon which a tax based on gross premiums." Envolve's contract with

Coordinated Care is not dependent on its corporate affiliation with Coordinated Care.

The Department relies on Armstrong, for the proposition that the purpose of the

insurance business exemption in RCW 82.04.320 is to prevent imposing a premium tax

-14-

No. 83563-7-I/15

and B&O tax on the same premium income, not to permit a person that pays no premium tax to avoid the B&O tax. Armstrong addressed the proviso in RCW 82.04.320 excepting those representing insurance companies, including agents and brokers, from the insurance business exception. The appellant challenged the proviso arguing that allowing the exemption for insurance company branch offices, but not independent agents or brokers violated equal protection.[9] Armstrong, 61 Wn.2d at 117-18. As the court explained, its duty was to "sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified." Armstrong, 61 Wn.2d at 120. The court concluded that because independent agents were sufficiently different from insurance companies, the differential tax treatment was justified.

This case does not concern the proviso—it concerns the exemption. The Armstrong court did not address, or hold, that applying the insurance business exemption to amounts received by a contractor performing activities required under the terms of the insurance contract would conflict with the intent of the exemption. Armstrong does not apply.

The Department relies on Express Scripts to argue that because Envolve is a PBM manager, it is subject to the B&O tax on its in-state service activities. Express Scripts concerned an out-of-state PBM manager (ESI) that had a variety of clients

---

[9] In 1962, RCW 82.04.320 provided:
Exemptions—Insurance business. This chapter shall not apply to any person in respect to insurance business upon which a tax based on gross premiums is paid to the state: Provided, That the provisions of this section shall not exempt any person engaging in the business of representing any insurance company, whether as general or local agent, or acting as a broker for such companies.

Armstrong, 61 Wn.2d at 117, n.2.

-15-

No. 83563-7-I/16

including HMOs, health insurers, third-party administrators, employers, and government health care plans. At issue was whether ESI was subject to B&O tax for payments it received from clients for the value of prescription drugs. ESI argued that the payments from clients for the value of the prescription drugs or ingredients were "pass-through" funds moving from its clients, through ESI, to the pharmacies. Express Scripts, 8 Wn. App. 2d at 171-172. Division Two of this court disagreed, concluding that "ESI does not act as a mere 'pass-through' agent for its clients. Rather, the compensation ESI receives from its clients for the value of the prescription drugs is an integral part of ESI's business model for its PBM services." Express Scripts, 8 Wn. App. 2d at 174. While the court concluded that ESI owed B&O taxes for its PBM services, the court did not address, or discuss, the insurance business exemption in RCW 82.04.320. Express Scripts does not support the Department's position.

Envolve's PBM activities under its contract with Coordinated Care are at least functionally related to "insurance business upon which a tax based on gross premiums [was] paid to the state." RCW 82.04.320. We affirm the superior court's order reversing the Board's decision.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____
Smith, A.C.J.

_____
Andrus, C.J.

-16-